Appearing on behalf of Dr. Rajan, this is a case of a doctor who worked for the Veterans Administration in Las Vegas. He was terminated approximately three years ago, and we had an administrative hearing, which he lost, and then we appealed that to Judge Pro, and that was denied, and then we're here today. We have several issues we'd like to bring to you. First, with respect to the charges themselves, he was charged with a series of seven counts, essentially, that range from Excuse me a second. Do you want to start the clock? Do you want to start the clock? I thought I had a special preference here. Well, we'll let you wind up a little bit. Thank you. Okay. Go ahead. Start moving, yeah. I feel like a basketball player. Anyway, there were seven charges that were used to bring about the termination. They ranged over a period of one year. They ranged from things like being AWOL, by their definition, which was he took a day of absence to be treated for a doctor and then didn't provide prior substantiation. Then it also ranged to things like improper diagnosis of a patient. So the seven counts were a total range of things. They went over a year. There was no prior discipline. There were no prior warnings with respect to any of these incidents. They just put them all together, handed them to him and said, you're discharged. And in the discharge notice itself, it reads the legal basis for it was two CFRs, one of which deals with violations of law or violations of ethics, which don't apply to these instances. Another CFR involves criminal or dishonest conduct, which is not involved here. Then there was a memo, memorandum from the local center there, which dealt with patient abuse, which we don't believe applies to this situation. Did this facility have a peer review committee? Yes. Were these matters ever referred to the peer review committee? No. Did it have a physician's improvement program? No. Well, I shouldn't say that. We don't know that, but he was never put on anything like that. And the only prior case that we're aware of where this has gone to district court and been published, the Claussen case, that's what was in the background was there was performance improvement plans, peer reviews, which were used to then substantiate. But in this case, you have what essentially are malpractice-type claims that have never been evaluated locally. Then you come before they're used for a termination. Then we went to a three-member board of doctors, but there's a psychiatrist, a neurologist or something. They weren't people that were designed for those specialties. I thought I saw something that was some kind of earlier proceeding, not involving these particular charges, but something earlier regarding his behavior. Is that incorrect? There was a reference to an AWOL in ñ well, there's two things. He was on ñ when he ñ after the first year, he was on probationary period. Specifically, was there some earlier kind of review of him? Not really. As far as ñ I mean, there were things that were raised in e-mails back and forth, but there was never any kind of review on the seven instances that we're here about. And, for example, he was never warned. No. There was no warnings at all in the record as far as, you know, don't do this again or never even had a chance to come to conclusions on what had happened. But, for example, there's an instance where the emergency room ñ he's on call. The emergency room doctor calls him at night and says there's a patient in here with a heart problem. We would like to admit him. And so my client says ñ asks a few questions about it and ends up that he's ñ my client says don't admit him. They bring this up as a charge. In the charge, which the first he got, the charge was that he had been ñ the patient had been diagnosed with what's called cardiogenic shock, which is a serious illness, and my client had failed to act on that. Well, look, the question really is they decide ñ somebody, administrator, says, well, this guy is just an incompetent doctor, for whatever reason. Doesn't get along with staff, doesn't get along with people. He's not treating his patients properly. And so they commence the proceeding to divorce themselves from him. What's wrong with that? I notice you do mention they cited certain sections that you don't think are completely applicable. Right. I don't know that the law says they have to cite any sections at all. And that's one of the problems is there is no law specific about this as to what they have to cite. But it seems like if you do cite a law that it ought to apply. I mean, if you're accused of ethical violations and then you're brought in because you were AWOL, that has to raise the question whether the charges, the facts ñ I mean, if we're going to an administrative hearing ñ Well, one of the things they allude to is indifference, et cetera, a thing that talks about indifference, et cetera. You have to behave with honesty, with the community, and with the veterans, honesty, courtesy, compassion. They say he's the last thing, the last word in compassion. He's so bad that he doesn't know what compassion is, they say, they suggest. You know, he can't be rude. He can't be indifferent to his patients, et cetera. So let's say, you know, that's the closest thing we have in terms of written rules that talk about a physician who just doesn't know how to treat patients properly or other staff members. And that's what we're going to try to get rid of him for. What's wrong with that? That's a good question. I know you dispute the evidence, but the question is what's wrong with the concept, the procedure? I'm not sure that there is anything if that is the procedure. But if you're charged with being indifferent and then you present evidence that you were indifferent and the fact finder finds you were indifferent, then I guess you could fire them. Your fundamental claim, as I understand it, and correct me if I'm wrong, is that they proceeded too quickly to the decision of discharge and didn't explore any intermediate step. Is that fundamentally your claim? Essentially. I mean, you're taking that on. You don't object to the procedures that were used, but you do object to the penalty. Right. And also just the way that it's all brought together as a one year's worth of seven things that range from, as I said, AWOL to apparent malpractice, throw them all together and then say disprove these. Is there any requirement in the law that in the regs that govern this particular department that require supervisors to proceed to intermediate steps to refer these things to peer review committees to work on progressive discipline? Is there any such requirement? Not that I'm aware of. I mean, I think it's common sense, but we didn't put anything in the record that says, you know, you failed to meet this step or this step or whatever. But, you know, we are dealing with a doctor. We're dealing with someone who in the records itself says, you know, we're going to submit this to the national database if we find against you. So, I mean, it goes to his professional licensure. And yet when we go in and we show that, for example, there was no cardiogenic shock, and they say, well, it doesn't matter, you should have referred it anyway. It's like, hello, what do we do? You're down to about three minutes. Did you want to save a little time for rebuttal? Thank you. Thank you for your argument, counsel. We'll hear from the secretary at this time. Counsel. Good morning, Your Honor. If it pleases the Court, my name is Carlos Gonzalez. I'm an assistant U.S. attorney stationed in Las Vegas. Your Honor, in this particular case, obviously there is no dispute that the doctor was afforded the appropriate procedure to get to the decision that was achieved. It is, I think it's noteworthy to indicate that these doctors that were members of this particular board, these three doctors, they didn't know Dr. Rajan. They came from all parts of the land, New Jersey, Illinois, and New Mexico. And they gave Dr. Rajan two full days of hearing, producing a record that is the biggest I've seen, 1,153 pages, five inches thick. Why no intermediate steps? Why no counseling, no progressive discipline, no peer review of the claim, complaints about the allegations about inadequate medical treatment? Your Honor. Why none of that? Your Honor, the law does not require that there will be a prerequisite peer review or progressive disciplinary action. So the way the Veterans Department is comfortable with the way its hospitals are run, if there's any complaint about a physician that relates to the way they treat patients, you just throw it into the administrative procedure? You never refer it to peer review? I would not say that. They would never do that. No, Your Honor. It appears that that is not the case. Why wasn't it done here? I mean, one of the complaints was that he prescribed the wrong medication for the wrong patient, or maybe the right medication for the wrong patient, or the medication got to the wrong patient. That's a pretty serious allegation. Why wasn't that peer reviewed? I wouldn't be able to answer that, Your Honor. I don't know exactly what decision or what elements came into the discretionary decision of the director of the medical center to decide that this case will not be put in a peer review, but it will go to a disciplinary appeals board and he will have a chance to explain what he did there. In his case, Your Honor. Is it correct that this was to physicians who occupied other specialties? As far as I know, yes, Your Honor. In addition to that. Who would have – who would have – is it correct to say who would have been medically incompetent to perform – let me finish my question. May I finish my question? Yes, sir. Then you can answer it all you wish. Is it correct that by virtue of their specialty, the people that sat on these boards would be medically incompetent to render the professional services that were being questioned about Dr. Rehan? No, Your Honor. Explain why. Who were the people on this board? What specialties? I don't believe that I have. Maybe I do. That would be on ER. Just tell me what the court, what they were. They are listed as – one of them is listed as a chief of staff of New Jersey. Another one is listed as a staff physician. And the second one, the third one is also listed as a staff physician. Were there general MDs? Apparently so, yes, Your Honor. And some of the charges that were leveled against Dr. Rehan would be charges that any practitioner doctor would be familiar with, such as prescribing the wrong prescription for the right patient and not going AWOL while on duty and things of that nature. I think it was the right prescription that went to the wrong patient. Whatever. Go ahead. And so also – What about the charges on – I'm thinking of the latter counts, charge 6 and 7 with Robert Andrews and Harold Block. Those were specialized situations, right? Yes. I would say that that probably is, but I believe that is a charge in which he was – he should have hospitalized the patient rather than to send it home. And I believe that the conclusion of the board was that that should not have been done. He should have been – I know what the board's conclusion was. The question is one of substantial evidence and qualification. It seems to me, with those two patients, it just seems to me that in reading the record, it's a fairly – it's difficult to say that the standard of care was breached or that sufficient evidence existed to support that. Even if that – I mean, one of the chief witnesses called one of them a soft call, could go either way. Now, that would be legally insufficient in a malpractice trial. Why is it legally sufficient here to sustain the charge? Your Honor, if it was not to be sufficient to support that particular charge, there were another six charges. I wasn't asking about the other six. I was asking about this. In this one, in this particular one, I don't believe that they would have perhaps a level of expertise. Well, let me quote you. This is the expert testifying. I'm not talking about the board or the expertise at this point. I would say it was a soft call. You could go either way. We're talking about Harold Bollack, I believe, is the patient name. Well, that would not qualify as medical – expert medical testimony in a civil trial sufficient to sustain a charge of malpractice. It would have to be dismissed. So my question to you is why shouldn't that count? How can that count survive here when it would not survive the usual standards in a civil malpractice trial? I would not have an answer for that, Your Honor. Okay. Is that the standard? Sir? Is civil malpractice trials the standard for the way doctors are to behave in hospitals? If they can get beyond a civil malpractice trial, then it's okay what they do? Is that the standard? No, Your Honor. That is not – that would not be the standard. Well, they've got seven things here. They look at them all. They say, you know, take them all together. It looks to me like this guy shouldn't be working here. We think, say the doctors – by the way, is there any rule that you have to have experts in the particular field on the adjudicatory panel, if you call it adjudicatory? No, Your Honor. There is not such a requirement on the basis of the broad – the type of so broad field that we would be dealing with. And what that would – I believe this – it would be very difficult to put these cases together if we were to look for specific doctors in the specific field of the doctor that is being charged. All right. Well, let me ask you an evidentiary question, then. If you don't think a civil standard ought to apply, what standard does apply for a finding of malpractice in this context? What proof do you have to have to sustain a malpractice charge in this context sufficient to fire a physician? I'm not talking about the other five charges. I'm just talking about the malpractice charges. Are we talking about the one? No, no. I'm talking as a general matter. What is the regulatory standard in this context for a physician to be discharged for malpractice? I believe that would – that would depend. You don't know? Your Honor? You don't know what the standard is? Specifically, no, Your Honor. I would – I would – Isn't that what this case is all about? I would – I would surmise to the Court that it would be the totality of the actions of the doctor. There's a legal standard, isn't there? In the law, there's a standard, isn't there? Well, that's correct, Your Honor. But you don't know what it is? I would assume it's a preponderance of the evidence, Your Honor. Well, that's a difficulty because I understand the standard of review in these cases, and we are deferential. But if what you're – basically what you're saying is that it's a standardless review that the – I mean, if that's – I hope that's not your position. No, Your Honor. But it's difficult for me to understand what then – if you're just taking a charge of malpractice, what's the standard that guides this Board in determining whether legal malpractice – or medical malpractice sufficient to terminate a physician has occurred? Counsel, the charge we're talking about is poor clinical judgment. Well, Your Honor, in addition to that, that was only part of the violation that the Board found. There were additional things that were – that were as well found with Dr. Rajan that caused the Board to make the recommendation that they made. Some of these charges had to do with professional – professional incompetence, but some of them had to do with professional behavior or conduct of government employees. And both of them taken into – into combination is what caused the seven charges to be – to be leveled against Dr. Rajan. Each and every one of them was sustained. So even if one or two would not be finished up, then I believe that the totality of those who – that he was found responsible for would be enough to have him removed from office, Your Honor. Thank you, Mr. Gonzales. Thank you. Mr. Sigurblom, rebuttal. Just briefly to answer the question, the – there was a neurologist, a psychiatrist, and a family practice specialist, none of which obviously were specialized in heart problems, which were the two essentially malpractice-type claims, which we had the expert witness testify. One was called a soft call. The other one he said, my client did the right thing. So the answer to the question is, I guess, do you have to have any evidence to support what they said? We don't think there was any evidence to support the charges. Well, my problem, counsel, and I sort of mentioned it to your opposing counsel, is the notion that poor clinical judgment is equivalent to malpractice. It strikes me that professionals can have poor judgment and not cross the malpractice line. And what they're saying is that you showed poor clinical judgment in the way you responded to the emergency room and in the fact that once the person was admitted, you didn't even go to personally evaluate his status once he was admitted. Now, he has reasons for that, I understand. But the charge isn't, therefore, you could have a judgment against you for malpractice. It's that you showed poor clinical judgment, not good judgment. Judgment is kind of an interesting animal. You can have bad – you know there's some lawyers out there who never commit malpractice and their judgment is rotten? As I said, if my professional license is being judged on that standard, I would be very concerned. I think that's our problem. We're taking amorphous, very vague concepts and applying it to a profession which has very strict standards, very high standards to get into, and yet you come back with something like this where we're taking an AWOL and an atributor fibrillation and putting them together and saying collectively this justifies termination.  I'm not sure how we get there, but I think this is just too vague to threaten somebody's profession the way this has done. Okay. Thank you very much for your argument. Thank both counsel for their argument. The case just argued will be submitted for decision.
judges: Fernandez, Hawkins, Thomas